## Associates Commercial Corporation v. Department of Environmental Resources

*Philip C. Wolf*, of *Rose, Schmidt, Dixon, Hasley, Whyte & Hardesty*, for appellant.

*Gary Waxman*, for Department of Environmental Resources.

BURKE, *Member*, July 2, 1979—This matter is before the board on an appeal by Associates Commercial Corporation (Associates), from an order of the Department of Environmental Resources (DER), dated October 3, 1978, which prohibits Associates from repossessing certain pieces of mining equipment located at surface mining operations conducted by Blake Becker, Jr., and the Becker Coal Company (referred to collectively herein as Becker). The DER contends in the order that the mining equipment is needed to reclaim the strip mine sites.

Associates has filed a motion to vacate or dismiss contending that the DER lacks the statutory authority to issue the October 3, 1978, order. Oral argument before the board en banc was held on the motion and both parties have filed briefs in support of their respective positions.

We are empowered to grant a motion to dismiss prior to hearing where, on an appeal from a DER order, appellant shows that there is no genuine issue as to any material fact and that the appellant

is entitled to judgment as a matter of law: Summerhill Borough v. Com., DER, 34 Pa. Commonwealth Ct. 574, 383 A. 2d 1320 (1978); Primrose Mining Co. v. Com., DER, EHB Docket no. 77-184-B (issued October 4, 1978).

Appellant's motion to vacate or dismiss is granted for the reasons stated herein.

• • •

## DISCUSSION

Associates is a commercial lending institution. Its involvement in this surface mining reclamation dispute stems solely from its financing of three pieces of mining equipment for Becker. The pieces of mining equipment, a Caterpillar excavator, a Caterpillar dozer and a Caterpillar wheelloader, are presently being used to mine coal at one or more of Becker's ten strip mining operations in Pennsylvania.

Becker has defaulted on its monthly installment payments to Associates and Associates has attempted to repossess its equipment. In June 1978, Becker filed a petition in bankruptcy under Chapter 11 of the Federal Bankruptcy Act. Shortly thereafter, Associates filed a complaint in reclamation with the Federal bankruptcy court to recover the three financed pieces of mining equipment. The bankruptcy court on January 5, 1979, issued a memorandum opinion and order requiring Becker to release the three pieces of mining equipment to Associates. Its attempt at repossession is being thwarted by the October 3, 1978, order from DER, which prohibits Associates from removing any mining equipment from any mine site on which Becker is conducting surface mining operations

until the sites have been completely reclaimed in accordance with the requirements of the Surface Mining Conservation and Reclamation Act of May 31, 1945, P.L. 1198, as amended, 52 P.S. §1396.1 et seq. The DER issued the order because it believes that Becker will be unable to reclaim the sites if the three pieces of mining equipment are removed therefrom.

An administrative order cannot create a duty or obligation that does not otherwise exist. An order can only interpret and apply existing law to a given factual situation. Thus, even if these ten strip-mined sites would remain unreclaimed without the use of Associates' mining equipment, DER cannot by order require Associates to use its equipment for reclamation unless Associates is under an antecedent legal obligation to do so.

The DER grounds its order on three different statutory provisions: (1) 25 Pa. Code §77.92(f)(2) which was adopted under the Surface Mining Conservation and Reclamation Act, supra; (2) §1917-A of the Administrative Code of April 9, 1929, P.L. 177, as amended, 71 P.S. §510-17, which empowers the DER to abate a nuisance; and (3) The Clean Streams Law of June 22, 1937, P.L. 1987, as amended, 35 P.S. §691.1 et seq.

25 Pa. Code §77.92(f)(2) provides that: "Backfilling equipment needed to complete the restoration shall not be removed from the operation until all backfilling and leveling has been completed and released by the Department. Backfilling equipment shall be operable, in use, and capable of meeting the requirements of the reclamation plan throughout the life of the mining operation."

The regulation is contained in subchapter D of Chapter 77 of 25 Pa. Code which is entitled "Re-

quirements Accompanying Permits Authorizing The Operation Of Surface Coal Mines." As the title states, it applies to the permittee-operator as a condition of his permit. It helps to assure that the permittee will comply with the duty to reclaim the surface mining operation. The permit can be immediately revoked if reclamation equipment is removed.

We disagree with the DER's assertion that 25 Pa. Code §77.92(f)(2) also imposes upon Associates a duty to assure that reclamation equipment is present at mining operations. In fact, it is probably not possible for Associates to fully comply with the terms of section 77.92(f)(2). The second sentence requires that the equipment be kept "operable, in use, and capable of meeting the requirements of the reclamation plan." It is unlikely that Associates can keep the equipment operable unless it has possession of the equipment. Associates cannot take possession of the equipment unless it removes it from the site and out of the control of Becker and the first sentence of section 77.92(f)(2) prohibits the removal of the equipment from the site.

Not only is Associates unable to assure DER that the equipment will remain operable, the order deprives Associates of the ability to protect and maintain its own equipment. It must rely on Becker. Also, the order enables Becker to continue to mine coal with Associates' equipment at Associates' loss, but at no cost to Becker for an indeterminate period, and no assurance exists that Becker will use the equipment to reclaim the land. He might use the equipment to mine coal, to restore the land or he might abandon the equipment.

In sum, we are of the view that the interpretation

placed on section 77.92(f)(2) by the DER is erroneous because: (1) Its interpretation contradicts the title of the subchapter where it is contained. Section 1924 of the Statutory Construction Act of December 6, 1972, P.L. 1339, 1 Pa.C.S.A. §1501 et seq., states that the titles of sections of a statute, although not controlling, may be used to aid in its construction. (2) Its interpretation imposes two irreconcilable duties upon appellant. Section 1922 of the Statutory Construction Act, supra, states that a presumption exists that the General Assembly intends the entire statute to be effective and certain. (3) Its interpretation places a duty upon an innocent third person to rectify a condition that he had no part in creating. (4) Its interpretation places appellant's property in the hands of the surface mine operator for the profit of the operator, without any assurance that appellant's property will not be misused or abandoned and without any assurance that the reclamation work will be performed.

The DER's course of action under 25 Pa. Code §77.92(f)(2) is against the permittee-operator. If the operator has its mining equipment repossessed, it is the operator who has violated 25 Pa. Code §77.92(f)(2), not the creditor. The DER argues that if its order is not sustained, an operator will be able to circumvent section 77.92(f)(2) by selling or otherwise conveying the mining equipment to a third person. We disagree. Nothing said herein permits an operator to lawfully remove equipment from the site by conveyance to a third party.

DER's contention that section 1917-A of the Administrative Code, supra, which empowers the DER to order the abatement of nuisances, constitutes authorization for the order is also erroneous.

We agree that an unreclaimed surface mining site constitutes a nuisance per se. See section 4b(a) of the Surface Mining Conservation and Reclamation Act, supra. However, the appellant has no duty to abate the nuisance. A person does not become responsible for continuing a nuisance, merely because he has the ability or has equipment available to abate a nuisance but chooses not to. "[M]ere failure to abate a nuisance created by another does not alone constitute a continuance thereof; there must be some active participation in the continuance." 58 Am.Jur. 2d, Nuisance, §48. See also Philadelphia Chewing Gum Corporation v. Com., DER, 35 Pa. Commonwealth Ct. 443, 387 A. 2d 142 (1978). The cases cited by the DER to support its contention, Com. v. Barnes & Tucker Company, 455 Pa. 392, 319 A. 2d 871 (1974), Com. v. Harmar Coal Co., 452 Pa. 77, 306 A. 2d 308 (1973), and United States Steel Corp. v. Com., DER, 17 Pa. Commonwealth Ct. 594, 333 A. 2d 486 (1975), are inapposite. In each case the party held responsible for abating the nuisance owned and had previously operated the coal mine at which the nuisance occurred. They abridged a duty to use their property in such a way that it would not be injurious to the public.

The DER's reference to The Clean Streams Law, supra, suffers from the same malady. The DER contends that the removal of the equipment prior to the completion of reclamation will "cause or allow pollution which otherwise might be prevented." The DER is mistaken; the cause of the pollution is the refusal or inability of the operator to reclaim its surface mining operations, not Associates removal of its equipment. Merely because action by one person is necessary to prevent harm to another person

or property is not sufficient in itself to impose a duty to take such action, irrespective of the gravity of the harm and the insignificance of the effort or expense of providing aid. In Yania v. Bigan, 397 Pa. 316, 155 A. 2d 343 (1959), the Pennsylvania Supreme Court held that the operator of a surface mine had no legal responsibility to rescue a person from drowning in water on his property, since the operator was not legally responsible for placing him in the perilous position. Prosser states in his Law of Torts the law on duty to provide aid:

"Because of this reluctance to countenance 'non-feasance' as a basis of liability, the law has persistently refused to recognize the moral obligation of common decency and common humanity, to come to the aid of another human being who is in danger, even though the outcome is to cost him his life. Some of the decisions have been shocking in the extreme. The expert swimmer, with a boat and a rope at hand, who sees another drowning before his eyes, is not required to do anything at all about it, but may sit on the dock, smoke his cigarette, and watch the man drown. A physician is under no duty to answer the call of one who is dying and might be saved, nor is anyone required to play the part of Florence Nightingale and bind up the wounds of a stranger who is bleeding to death, or to prevent a neighbor's child from hammering on a dangerous explosive, or to remove a stone from the highway where it is a menace to traffic, or a train from a place where it blocks a fire engine on its way to save a house, or even to cry a warning to one who is walking into the jaws of a dangerous machine. The remedy in such cases is left to the 'higher law' and the 'voice of conscience,' which, in a wicked world,

would seem to be singularly ineffective either to prevent the harm or to compensate the victim." Prosser, Law of Torts, Chapter 9, §56, 340 (4th Ed. 1971.)

Similarly, because appellant's equipment is needed to prevent the pollutional discharge of mine acid drainage is not, by itself, sufficient to impose a duty upon appellant to give up its equipment for use in prevention of the pollutional discharge, and appellant does not "cause" pollution when it refuses to use its equipment to reclaim a surface mine site and thus prevent the discharge of mine acid drainage where appellant did not, in any way, contribute to the condition of the sites.

The Surface Mining Conservation and Reclamation Act provides for a myriad of remedies to be used against an operator if he fails to restore the mined areas. The DER may issue an order requiring reclamation (52 P.S. §1396.4(c)), enjoin the violation by court order (52 P.S. §1396.20), file criminal charges (52 P.S. §1396.3a) and may revoke the operator's license, prohibiting him from mining coal in Pennsylvania.

The act also provides a remedy in the instance where the operator is unable to reclaim a mining operation. Section 4(c) provides that all operators are required to file with DER a bond for no less than the estimated cost of performing the reclamation work either by the DER or through independent contractors. If DER has erred and the forfeited funds are not sufficient to restore these lands then general funds must be used. Associates owes no legal duty to the public to reclaim these lands. As between the public and appellant, a third party who has no responsibility for the condition of the surface

mining sites, we believe the public should sustain the cost of reclamation.

• • •

### ORDER

And now, July 2, 1979, it is hereby ordered that the order of the DER issued to appellant, Associates Commercial Corporation, dated October 3, 1978, is dismissed.